IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PERRY NATHAN RATNER and, | ) | |
| KAREN LYNN RATNER | ) | |
| Debtors. | ) | Case No. 04-22246-drd |
| | ) | |
| _____ | ) | |
| | ) | |
| JANICE A. HARDER, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 05-2024-drd |
| | ) | |
| v. | ) | |
| | ) | |
| CITIBANK (SOUTH DAKOTA), N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Perry Nathan Ratner ("Ratner") and Karen Lynn Ratner filed a Chapter 7 bankruptcy petition on September 13, 2004 ("bankruptcy filing"). Janice A. Harder was appointed as the Chapter 7 trustee ("Trustee"). The Trustee filed an adversary proceeding, pursuant to 11 U.S.C. §§ 547(b) and 550(a) ("Complaint"), to recover funds allegedly transferred by the Debtors to Citibank (South Dakota), N.A. ("Citibank") within 90 days of the bankruptcy filing. This is a core proceeding under 28 U.S.C. §157(b)(2)(E) and (F) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1). Based on the Stipulation of Facts, the briefs, supplemental briefs and the affidavits filed by the parties, the following constitutes my Findings of Fact and Conclusions of Law in accordance with Rules 52 of the Federal Rules of Civil Procedure as made applicable to these proceedings by Rules 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set

forth below, I find that the two payments made by Ratner to Citibank, each in the amount of $350.00, constitute avoidable preferences which the Trustee may recover pursuant to 11 U.S.C. §§ 547(b) and 550(a). With regard to the alleged preference in the amount of $15,646.25, I find that there was no "transfer of an interest of the debtor in property" within the meaning of § 547(b) and therefore no preference.

## I. FACTUAL BACKGROUND

The following facts are not disputed. Citibank is a national banking association that issues private label credit card accounts under the name of "AT&T Universal Card", and also under the name "Citi Platinum Select Card."[1] In August of 1990, Ratner opened an AT&T Universal Card Visa credit card, with an account ending in 1931 (the "AT&T Account").[2] In August of 2001, Ratner opened a Citi Platinum Select Card Mastercard credit card, with an account ending in 1963 (the "Citi Platinum Account").[3] Citibank is the issuer of both the AT&T Account and the Citi Platinum Account.[4] The Retail Installment Credit Agreements associated with the AT&T Account and the Citi Platinum Account (collectively the "Agreements") each

---

[1] Stipulation of Facts, ¶ 3, (hereinafter "Stipulation").

[2] The AT&T Account was originally issued by Universal Bank N.A ("Universal Bank"). Universal Bank was acquired by Citigroup in December of 1997. Universal Bank transferred all of its assets, including the AT&T Account, to Citibank on January 2, 2002. Thereafter, Citibank issued the AT&T Account to Ratner. Affidavit of Lorraine Page in Support of Defendant's Opposition to Plaintif's Complaint for Avoidance and Recovery of Preferential Transfer (hereinafter "Citibank Affidavit"), ¶'s 3-5; Stipulation, ¶ 6.

[3] The Citi Platinum Account was issued by Citibank. Citibank Affidavit, ¶ 6; Stipulation, ¶ 6.

[4] Stipulation, ¶ 6.

contain a paragraph which prohibit balance transfers from one Citibank account to another.[5] Debtor failed to make a timely payment toward the balance on the AT&T Account, which resulted in a change in that card's interest rate from 9.99% to 28.24%.[6] Ratner sought to reduce his interest rate and on July 23, 2004, he initiated a transaction whereby $15,646.25, the balance on the AT&T Account, was moved to the Citi Platinum Account.[7] On July 27, 2004 and August 14, 2004, Debtor made two payments, each in the amount of $350.00 on the AT&T Account.[8] Since the AT&T Account had a zero balance and was ultimately closed in September of 2004,[9] these two payments were credited against the Citi Platinum Account.

## II. DISCUSSION AND ANALYSIS

A trustee may avoid as a preference a pre-petition transfer by the debtor if the trustee can prove the following elements: (1) a transfer of an interest of the debtor in property; (2) the transfer was made to or for the benefit of a creditor; (3) the transfer was made for or on account of an antecedent debt owed by the debtor before such transfer was made; (4) the debtor was insolvent when the transfer was made; (5) the transfer was made on or within 90 days before the filing of the bankruptcy petition; and (6) the transfer enables the transferee to receive more by

---

[5] Citibank Affidavit, ¶ 9. See also Exhibits A and B of the Citibank Affidavit.

[6] Citibank Affidavit, ¶'s 10 and 11; Affidavit in Support of Plaintiff's Brief in Support of Plaintiff's Complaint for Avoidance and Recovery of Preferential Transfer ("Debtor Affidavit"), ¶ 4.

[7] Stipulation, ¶ 7; Citibank Affidavit, ¶ 16; Debtor Affidavit, ¶ 6. Whether this transaction constituted a "transfer" of the AT&T Account to the Citi Platinum Account or a "consolidation" of the two accounts is a disputed fact.

[8] Citibank Affidavit, ¶ 19; Stipulation, ¶ 8.

[9] Citibank Affidavit, ¶'s 18 and 19.

virtue of the transfer than the transferee would receive in the chapter 7 case, had the transfer not been made, and the transferee received payment of its claim to the extent provided under the Bankruptcy Code. *Ward v. Sterling National Bank*, 230 B.R. 115, 118 (8th Cir. BAP 1999) (*citing Buckley v. Jeld-Wen, Inc. (In re Interior Wood Products Co.)*, 986 F.2d 228, 230 (8th Cir.1993)); 11 U.S.C. § 547(b). The primary purpose of the preference statute is to facilitate equality of distribution among creditors of the debtor. *Getman v. Providian Bancorp*, 218 B.R. 490, 492 (Bankr.W.D.Mo. 1998) (*citing* 5 Collier on Bankruptcy, ¶ 547.01 at 547-9.).

The bankruptcy court's determination that a transfer occurred and that it satisfies each of the elements of a preference under § 547(b) is a factual issue. *See Ward*, 230 B.R. at 118 (*citing Lovett v. St. Johnsbury Trucking*, 931 F.2d 494, 497 (8th Cir.1991). Here, the parties requested that the Court rely on the pleadings, briefs, stipulation of facts and affidavits on file when analyzing whether Ratner made three preferential transfers to Citibank. Thus, the Court's decision is ultimately a question of which parties' purported set of facts, as set forth in the briefs and affidavits, is more persuasive. The burden is on the trustee to prove each element of a preference by a preponderance of the evidence. *Ward*, 230 B.R. at 118 (*citing Matter of Prescott,* 805 F.2d 719, 726 (7th Cir.1986).

As set forth previously, § 547(b) allows the trustee to avoid "...any *transfer* of an interest of the debtor in property..." which satisfies the other requirements set forth in the statute.[10] (Emphasis added). The parties do not dispute that the two payments made by Ratner to Citibank within 90 days of the bankruptcy filing, each in the amount of $350.00, constitute an avoidable

---

[10] See 11 U.S.C. § 547(b).

preference pursuant to § 547(b).[11] Whether Ratner's balance of $15,646.25, initially on his AT&T Account and later moved to his Citi Platinum Account, constitutes a preferential transfer is the precise issue before the Court.

The Trustee contends that Ratner "transferred" the balance of his AT&T Account to his Citi Platinum Account, in an effort to obtain a lower annual interest rate.[12] The Trustee, in reliance on *Getman*, argues that the alleged transfer also satisfies the other elements of § 547(b), and is therefore an avoidable preference. Citibank counters with the argument that the transaction initiated by Ratner, which resulted in the balance of his AT&T Account being moved to his Citi Platinum Account, was a "consolidation" of his two Citibank accounts and therefore no "transfer" occurred under § 547(b).[13] Citibank's argument is bolstered by the fact that, because it issued both the AT&T Account and the Citi Platinum Account, Ratner was contractually forbidden, pursuant to the Agreements, to transfer a balance from one Citibank account to another Citibank account.[14] Based on the specific facts of this case, the Court finds

---

[11] At the telephonic conference held on August 12, 2005, Citibank conceded that the two payments of $350, made by Ratner to Citibank, constituted preferential transfers pursuant to § 547(b).

[12] Debtor Affidavit, ¶4.

[13] A Citibank customer who seeks to enjoy a lower interest rate may consolidate two or more credit cards into a single credit card account so long as the credit card accounts have the same primary cardholder name. Once a consolidation has been approved, all purchases and all cash balances are combined into the respective standard segment of the surviving account. The credit lines are combined and the non-surviving account(s) are closed and cannot be reopened. Citibank Affidavit, ¶ 13.

[14] Exhibit A and B to the Citibank Affidavit, which are copies of the Retail Installment Credit Agreement for the AT&T Account and the Citi Platinum Account, each contain the following language: "Balance transfer checks may not be used to pay any amount owed to us under this or any other [Citibank] Card Agreement that you have with us."

the Trustee's reliance on *Getman* misplaced. In *Getman*, the debtor initiated a transfer of a credit card balance from one creditor to a different creditor. *See Getman*, 218 B.R. at 490. Here, Citibank issued both the credit cards, there was only one creditor and the Debtor was contractually forbidden to transfer balances from one account to another. Unlike the debtor in *Getman*, Ratner did not have the option to transfer the balance from his AT&T Account to his Citi Platinum Account because they were both issued by the same creditor.

There is some discrepancy regarding whether Ratner was aware that both of his accounts were issued by Citibank or whether he used the term "consolidate" or "transfer" when he initiated the transaction. The Court finds this discrepancy immaterial. The Court finds Ratner's recollection of the facts associated with the transaction vague and unpersuasive. Citibank, on the other hand, offers a reasonable and logical explanation of how it processed Ratner's request to enjoy a lower interest rate. Citibank acted in accordance with its policy and procedures, consolidated Ratner's two Citibank-issued credit cards and closed the non-surviving account (the AT&T Account). As part of the consolidation, Ratner received a lower interest rate on the Citi Platinum account and the credit line for the two accounts were combined to allow Ratner additional credit. The Court is convinced that Ratner's efforts to obtain a lower interest rate resulted in a consolidation of his two Citibank accounts and thus, because there was no "...transfer of an interest of the debtor in property", this transaction does not constitute a preference under § 547(b).[15]

---

[15] Because the Court's holding is that no "transfer of an interest of the debtor in property" occurred, the Court is not deciding the question of whether a balance transfer from one account to another account constitutes a preference, regardless of whether there is one creditor or multiple creditors.

### III.  CONCLUSION AND ORDER

In sum, based on the facts of this case, and for all the reasons cited above, the Court finds that Ratner made two preferential transfers to Citibank in the sum of $700.  The Court further finds that because Ratner consolidated two Citibank accounts, there was no "transfer of an interest of the debtor in property" under § 547(b), and thus as a matter of law, that transaction does not constitute a preference.

A separate Order will be entered in accordance with Bankruptcy Rule 9021.


Dated:      October 28, 2005              /s/ Dennis R. Dow
                                          THE HONORABLE DENNIS R. DOW
                                          UNITED STATES BANKRUPTCY JUDGE